Jewett *v.* Barnard & *tr.*

## JEWETT *vs.* BARNARD & *Trustees.*

Where an insolvent debtor makes a general assignment of his effects, in trust for the benefit of such of his creditors as should, within a certain time, become parties, and release their demands ; a recusant creditor, who attaches the property in the hands of the assignees by a foreign attachment, is entitled to payment in preference to those who executed the assignment subsequent to such attachment, notwithstanding the covenant of the assignees to pay, *pro rata,* all the creditors who might become parties to the assignment.

In this case the question was upon the liability of *French* and *Harrod,* the trustees, who were assignees of *Barnard,* the principal debtor. It appeared from their answers that *Barnard,* being insolvent, made to them a general assignment of all his effects, in trust, first for the payment of certain favored creditors ; secondly, for the payment, *pro rata,* of all such creditors as should become parties to the assignment within ninety days ; and thirdly, to pay, in like manner, all his debts demanded within six months. The assignees covenanted to execute the trusts and dispose of the property accordingly. The indenture was executed by the debtor, the assignees, and the preferred creditors, when the assignees were summoned by a foreign attachment in the present suit. Afterwards, and within the ninety days, the other creditors became parties to the assignment. And there was money in the hands of the assignees, applicable to the second class of trusts, unless the plaintiff had a right to intercept it by this attachment. Whether he had such right, was the question submitted to the court.

*Greenleaf,* for the defendant, maintained the negative. The property, he contended became vested in the assignees as soon as the instrument was executed by them and the debtor, and one creditor ; *Hastings v. Baldwin,* 17 *Mass.* 552 ; leaving to the debtor only a

right of action upon the covenants; which were express and unambiguous, to pay all the creditors who might become parties within the terms of the assignment, and account for the surplus to the debtor. *Stevens v. Bell,* 6 *Mass.* 339 ; 7 *Mass.* 438. The attaching creditor, in a foreign attachment, succeeds only to the rights of his debtor. He cannot place himself in a better situation, if the transaction is not fraudulent. Nor can he change the nature of the debtor's contract. His process only affects the remedy ; it creates no new rights.

Here the assignees are bound at all events to pay over to those creditors who became parties within the ninety days. They could not prevent them from becoming parties. Nor could such creditors know of the pendency of this process. By executing the assignment they entitled themselves to a remedy on the covenants, and a *pro rata* distribution. It is only after such distribution that the debtor can call for any surplus. His creditor, therefore, can call for nothing more.

It is like money paid by *A* to *B,* who has promised to pay it to *A's* creditor *C,* and refund the surplus, if any, to *A.* Here *C* may have an action against *B* for the money. 1 *Com. Dig.* 206, *Assumpsit E* ; *Arnold v. Lyman,* 17 *Mass.* 400 ; *Hall v. Marston,* *ib.* 575. Now wherever the garnishee is liable over to a third person at all events, he cannot be adjudged trustee ; for this would be to expose him to pay twice. *Van Staphorst v. Pierce & tr.* 4 *Mass.* 258. Nor where, " by any reasonable probability," he may be liable to pay to a third person. 6 *Dane's Abr.* 494, *sec.* 8. He must be so situated as to be able to retain, against his principal, the effects disclosed. 6 *Dane's Abr.* 493, *sec.* 7. But here they could not retain, nor protect themselves against subsequent creditors.

In *Parker v. Kinsman,* 8 *Mass.* 486, the indenture was only of two parts, between the debtor and creditor, on which no action would lie in favor of a third person. Nor does it appear that any creditor had assented to the assignment; and without such assent, it is well settled that no property passed. The title therefore, in that case, was not changed. The case of *Ward v. Lamson & tr.* 6 *Pick.* 358, very recently reported, does not appear to have been well considered. The only reason there assigned, that without such lia-

bility of the assignees, the property would be locked up from the creditors, is not true. It would go to the other creditors, by the express terms of the indenture, which is undeniably a legitimate application of the funds. If any surplus remained, it would be liable to attachment.

*Fessenden* and *Deblois*, on the other side, relied on *Ward v. Lamson*, 6 *Pick.* 358, and *Marston v. Coburn*, 17 *Mass.* 454.

PARRIS J. delivered the opinion of the Court at the adjournment in *August* following.

The whole question in this case as to the liability of *French* and *Harrod*, as trustees, depends upon the effect of the assignment by them disclosed, made by *Barnard*, the principal defendant, in trust for the purpose of enabling them, as assignees, to discharge certain debts due to his creditors, he being, at the time of the assignment, an insolvent debtor. It is admitted by the disclosure that the just debts of those creditors who had assented to the assignment at the time of the service of the trustee process, would be insufficient to absorb the whole amount of property assigned ; but they contend that the surplus passed to other creditors provided for in the assignment, who signified their assent and became parties to it subsequent to the service of this process; so that at that time *Barnard* had no remaining interest which could be the subject of attachment. To what extent the property passed is then our only inquiry.

It is true that deeds of trust, when made for the undoubted benefit of persons who are absent, have been considered as vesting the legal estate in the trustee, without any expression of the assent of the persons for whose benefit such deeds are made. The assent of the *cestui que trust* has been presumed, inasmuch as the conveyance was made entirely for his benefit. It is rather upon the principle of gift, than of contract, that such acceptance has been presumed. So when property is conveyed in trust absolutely and unconditionally for the payment of debts, as in case of preferred creditors, perhaps the assent of such creditors, whose debts are thus absolutely and unconditionally provided for, might be presumed, upon the common law principles applicable to trusts; although the case of *Widgery v. Has-*

*kell*, 5 *Mass.* 153, would seem to render even such a position questionable.

The case supposed is one of an absolute, unconditional conveyance. Even in such a case, the assent of the creditors for whose use the conveyance was made would seem to be necessary to give it validity, inasmuch as it would be optional with such creditors to accept or resort to other, and, as they might believe, more effectual means to ensure an earlier payment. But when, by the very terms of the indenture, the creditors are required to discharge their whole demands in order to become entitled to any benefit from the property, can the instrument be operative in their favor until they assent to the condition? If A offer B a bale of goods, upon condition that B discharge his demand against A, does the property in the goods pass until the condition is complied with? Or, which is nearer this case, if A convey the goods to C, to sell and pay the proceeds to B, upon condition that B discharge his note against A of twice the amount, can the assent of B be presumed, or will it be contended that any thing passed for the use of B, until he assents to the condition? And if not, who has the equitable interest in that property? Is it locked up, or is it liable for the debts of A?

What was the situation of the property described in the assignment from *Barnard* to *French* and *Harrod*, at the time of the service of the trustee process? The indenture, at that time, had been executed by *Barnard*, by the assignees, and by three only of *Barnard's* creditors. The instrument had become operative; the property had passed to the assignees, for the benefit of such creditors as had signified their assent to the terms, to the amount of their debts. Those who had not were still strangers to the transaction. They had not, in the language of the indenture, " accepted the provision made for them, and released, acquitted and forever discharged the said *Barnard* from all their debts, dues and demands;" and it was not to be presumed that they ever would so compound; and of course, neither upon the principles of law applicable to trusts, nor by the terms of the assignment, could they have any interest in the property. It follows that at the time of the service of the trustee process on the assignees, the property assigned was liable, by virtue of the indenture, for the pay-

ment of such creditors only as might be presumed to have assented or had actually assented to its terms and conditions, and whatever surplus might remain, after discharging these demands is liable to such dissenting creditors of *Barnard* as attached it by this form of process in the hands of the assignees.

In this opinion we are confirmed by the case of *Halsey v. Whitney*, 4 *Mason* 217, where Mr. Justice *Story* says, "if the assignment be assented to by any creditors, and be in other respects free of fraud, to the extent of the debts due to those creditors, it is valid, and subsequently attaching creditors can only avail themselves of the surplus. This is the doctrine in *Hastings v. Baldwin*, 17 *Mass.* 552, and it appears to me founded in the strongest legal sense and public convenience." The same learned judge, in speaking of the necessity of creditors becoming parties to the conveyance, says, " I did not understand that any local decisions have gone the length of requiring that the creditors should assent to it at the moment of its execution. If they sign the instrument afterwards, the conveyance is good against all persons but intervening attaching creditors." The same principle is recognized as sound by Chancellor *Kent*, in his commentaries, *vol.* 2, *p.* 420, who says " the assent of the creditors, to be benefitted by the assignment, had been held to be essential to its validity, and the intervening attachment of another creditor, who is no party to the assignment, issued before such assent be given, has been preferred." In *Ward v. Lamson & tr.* 6 *Pick.* 350, the Supreme Court of Massachusetts say, " the question made in another case this term meets us likewise in this, namely, whether the plaintiffs will hold the funds by virtue of their trustee process in preference to the creditors who signed the indenture subsequently to this attachment. We did not anticipate that such a question would have been made. For twenty years it has been considered to be law that if an attachment is made before any creditor has become a party to the assignment, the attachment will hold. So, if it is made after some have signed the indenture, the attaching creditor will have a priority to subsequent signers. Otherwise, as it cannot be known whether creditors will or will not execute the assignment, the property would be locked up"—and the court add, " we think this is not now an

49

open question." Accordingly in the discussion of *Lupton v. Cutter & tr.* 8 *Pick.* 298, the question is considered as at rest, and is so treated by the counsel and the court.

Neither do we perceive that the liability of *French* and *Harrod* in this case depends upon any contingency. They disclose that they have the property of *Barnard* in their hands, and the question is to whom shall they pay it over? If by law it is to be paid to the plaintiff, in preference to such creditors as become parties to the assignment subsequent to the service of this process, the assignees are exonerated *pro tanto* from the claims of the latter. In *Thorndike v. DeWolf & tr.* 6 *Pick.* 123, the court say, " by the term contingent is intended an uncertainty whether any thing will ever come into the hands of the trustee, or whether he will ever be indebted, the uncertainty arising from the contract, express or implied, between the debtor and the trustee."

We are all clearly of opinion that the facts disclosed by *French* and *Harrod* shew them to be trustees of *Barnard*, at the time they were served with the plaintiff's writ, and they are accordingly so adjudged.